In a probate proceeding in which the initial executor of the decedent’s estate petitioned to judicially settle the first and final account of an irrevocable inter vivos trust, the objectant Alexander Doman appeals, as limited by his brief, from stated portions of a decree of the Surrogate’s Court, Suffolk County (Czygier, S.), dated October 3, 2011, which, upon a decision of the same court dated December 23, 2010, made after a nonjury trial, inter alia, directed Cynthia Schneider, as successor executor of the estate of Judith N. Doman, to return the sum of only $136,603 in annuity distributions to the subject trust; Cynthia Schneider, as successor executor of the estate of Judith N. Doman, cross-appeals, as limited by her brief, from so much of the same decree as determined that the inventory value of the real property that funded the subject trust was only $700,000 and disallowed the payment of a trustee’s commission to the estate of Judith M. Doman; and Alice Green, as executor of the estate of Paul Green, cross-appeals from stated portions of the same decree which, inter alia, disallowed the payment of a trustee’s commission to the estate of Paul Green and surcharged that estate for a portion of legal fees incurred by Alexander Doman.
Ordered that the decree is modified, on the law, by deleting from the fifth decretal paragraph thereof the sum of “$136,603” and substituting therefor the sum of “$212,265.25”; as so modified, the decree is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
Judith N. Doman (hereinafter Judith) died in May 2006, and Paul Green was appointed the executor of her estate. Green was also a cotrustee, with Judith (hereinafter together the trustees), *1074 of an inter vivos trust, known as the Doman Qualified Personal Residence Trust (hereinafter the trust), which had been settled and funded with real property owned by Judith and her husband, Nicholas Doman (hereinafter Nicholas). Green thereafter petitioned for the judicial settlement of his first and final account, on behalf of himself, as cotrustee of the trust, and as executor of Judith’s estate. Alexander Doman (hereinafter Alexander), Nicholas’s son from his first marriage, filed a variety of objections to the account. Alexander contested, inter alia, the propriety of the trustees’ payment to Judith of annuity distributions totaling $212,265.25. Alexander contended that the annuity distributions, which commenced after the sale of the real property that had funded the trust and were made from the proceeds of that sale, violated the terms of the trust and were void ab initio. Green died during the pendency of the proceeding, and Cynthia Schneider, Judith’s daughter from her first marriage, was appointed both as successor trustee of the trust and successor executor of Judith’s estate. After a nonjury trial, the Surrogate entered a decree which, among other things, disallowed a portion of the annuity payments made to Judith under the trust. Alexander appeals, Cynthia, as successor executor of Judith’s estate, cross-appeals, and Alice Green, as executor of Green’s estate (hereinafter Alice), separately cross-appeals from various aspects of the decree.
In a proceeding to settle a fiduciary’s account, “the party submitting the account has the burden of proving that he or she has fully accounted for all the assets of the estate, and this evidentiary burden does not change in the event the account is contested. While the party submitting objections bears the burden of coming forward with evidence to establish that the account is inaccurate or incomplete, upon satisfaction of that showing the accounting party must prove, by a fair preponderance of the evidence, that his or her account is accurate and complete” (Matter of Schnare, 191 AD2d 859, 860 [1993]; see Matter of Carbone, 101 AB3d 866, 868-869 [2012]; Matter of Tract, 284 AD2d 543, 543 [2001]; Matter of Anolik, 274 AD2d 515, 515-516 [2000]).
Here, Alexander’s objection to the payment of the annuity distributions to Judith should have been sustained (see Matter of Carbone, 101 AD3d at 868-869). Article II (6) of the trust provided that it would convert from a Qualified Personal Residence Trust (hereinafter a QPRT) to a Qualified Annuity Trust (hereinafter a QAT) within 30 days after the trust ceased to qualify as a QPRT, with annuity distributions to be made to Judith only “[i]f all or part of the [trust] is converted to a *1075 [QAT].” Although the trust provided that it would terminate upon Judith’s death, it also provided that it would cease being a QPRT for purposes of the Internal Revenue Code if the real property funding it ceased to be a “personal residence” within the meaning of the Internal Revenue Code and its implementing regulations (see 26 USC § 2702; 26 CFR 25.2702-5 [b]). Although the sale of the subject real property would appear to have terminated the trust on September 16, 2004, the same provision in the trust instrument stated that it ceased to be a QPRT “with respect to the proceeds of sale” of the real property held by the trust on the earlier of two years after the sale of the real property or the “termination date.” Since Judith’s death occurred less than two years after Judith sold the real property on September 16, 2004, the trust remained a QPRT until Judith’s death on May 5, 2006. Accordingly, payment of the distributions to Judith violated the terms of the trust, which, by its terms, was not converted to a QAT prior to Judith’s death. Accordingly the annuity distributions made to Judith must be returned to the trust (see EPTL 7-2.4).
Contrary to Alexander’s contentions, the Surrogate did not improvidently exercise its discretion in declining to impose interest on the refund of the trustee’s commission and in declining to compel the payment of Alexander’s legal fees by Judith’s estate (see Matter of Carbone, 101 AD3d at 868; cf. Matter of Janes, 90 NY2d 41, 55 [1997]).
There is no merit to Cynthia’s contentions regarding the value attributed to the real property that funded the trust or the applicability of an exculpatory clause in the trust, and there is no merit to Alice’s contention that Green’s estate should not have been surcharged in connection with certain legal fees incurred by Alexander (see Matter of Labua, 276 AD2d 630, 631 [2000]; Mahoney-Buntzman v Buntzman, 12 NY3d 415, 422 [2009]). Rivera, J.P., Balkin, Chambers and Sgroi, JJ., concur.